1

2

3 **IN THE UNITED STATES DISTRICT COURT**

4 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

6 SHERRY LOGAN,                                  CASE NO.  05-cv-1065 TAG

        Plaintiff,                         MEMORANDUM DECISION AND ORDER
7                                          ON PLAINTIFF'S APPEAL FROM
                                           ADMINISTRATIVE DECISION
8 _____vs.
                                           ORDER REMANDING THE CASE
9                                          PURSUANT TO SENTENCE FOUR
  MICHAEL J. ASTRUE,                       OF 42 U.S.C. § 405(g)
10 Commissioner of Social Security,[1]
                                           ORDER DIRECTING THE CLERK TO
11        Defendant.                       ENTER JUDGMENT FOR THE PLAINTIFF
  _____/        AND AGAINST THE DEFENDANT
12

13        Claimant Sherry Logan ("Claimant") seeks judicial review of an administrative decision

14 denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act

15 ("the Act"), 42 U.S.C. § 401 et seq., and Supplemental Security Income ("SSI") under Title XVI of

16 the Act, 42 U.S.C. § 1381 et seq.  Pending before the Court is Claimant's appeal from the

17 administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed

18 her complaint on August 8, 2005 (Doc. 1), and her opening brief on March 29, 2006.  (Doc. 14).[2]

19 The Commissioner filed his opposition to the appeal on April 28, 2006.  (Doc. 15).  On May 16,

20 2006, Claimant filed her reply brief.  (Doc. 16).

21        Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented

22 to proceed before a United States Magistrate Judge, and, by an order dated March 24, 2006, this

23 action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 13).

24 _____

25        [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
   Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

26        [2]  Claimant refers to her opening brief as a motion for summary judgment and, in her reply brief, states that she
27 is responding to the Commissioner's cross-motion for summary judgment.  (Doc. 16).  Although briefs filed in Social
   Security cases previously were deemed summary judgment motions, for several years this Court has termed the
28 documents as "opening briefs," "responses" or "oppositions," and, "reply briefs."  This memorandum opinion and order
   continues this trend.

1

1
## JURISDICTION

2       On October 9, 2001, Claimant filed separate applications for SSI and DIB, apparently

3  alleging in both an onset date of July 1, 2001[3] (collectively, "the applications").  (AR 277).  Her

4  applications were denied initially and on reconsideration.  (AR 33, 42, 56-59, 61-64, 281-82).

5       After timely requesting a hearing, Claimant and her counsel appeared before Administrative

6  Law Judge ("ALJ") James Ross on June 17, 2003.  (AR 65, 287-304).  On July 9, 2003, the ALJ

7  issued a written decision ("2003 decision") finding that Claimant was not disabled for purposes of

8  DIB or SSI.  (AR 47-55).  On February 27, 2004, the Appeals Council granted Claimant's request for

9  review, vacated the 2003 decision, and remanded the case to ALJ Ross with directions of what was

10 lacking in his original decision.  (AR 73-76).  The ALJ held a second hearing on November 2, 2004,

11 at which time he heard testimony from Claimant and a vocational expert ("VE"), Kenneth Ferra (AR

12 305-21).  On March 17, 2005, ALJ Ross issued a decision (the "2005 decision") in which he again

13 concluded that Claimant was not eligible for benefits under Title II or Title XVI of the Act.  (AR

14 11-19).  The Appeals Council denied Claimant's request for review on June 8, 2005.  (AR 6-8).  The

15 Appeals Council's decision, therefore, became the final decision of the Commissioner, which is

16 appealable to the district court pursuant to 42 U.S.C. § 405(g).  The initiation of an appeal in the

17 district court must be commenced within sixty (60) days of the Appeal Council's decision.  Id.  On

18 August 8, 2005, Claimant timely filed this action.  (Doc. 1).

19
## STATEMENT OF FACTS

20       The facts have been presented in the administrative hearing transcripts, the ALJ's decisions,

21 and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized

22

23

24 _____

25       [3] Claimant's initial application for DIB is not included in the administrative record.  (See generally AR).  The
state agency stated that her October 9, 2001, DIB application was a case concurrent to her SSI application.  (AR 281).
26 The record, however, also includes a denial of Claimant's DIB application, filed on December 23, 2001.  (AR 33).  To
further confuse matters, Claimant signed her state disability report on October 2, 2001, the Administrative Law Judge
27 stated that she filed her Title II application on December 3, 2001, and the Appeals Council reported that Claimant filed a
subsequent Title XVI claim on July 21, 2003.  (AR 50, 76, 93-102).  The administrative record does not contain a July
28 2003 Title XVI application.  (See AR).

here.[4]  In her initial applications, Claimant alleged that she could not work because she suffered from depression and hepatitis C.  (AR 94).  In her application for reconsideration, she included additional disabling impairments, including emphysema, arthritis, and circulation problems that caused her legs to become swollen.  (AR 130).

Claimant was born on January 21, 1963, making her 42 years old on the date of the ALJ's 2005 decision.  (AR 14, 292, 317).  Claimant testified that she had a twelfth grade education.  (AR 293).  Her past work included, in reverse chronological order, making telephone calls part-time on behalf of a political party, cashiering and, to a lesser degree, cooking at fast-food restaurants, and providing in-home support services.  (AR 293-294, 303, 310-313).

Claimant testified that she stopped working in 2001, and no longer was able to work, because of symptoms relating to her hepatitis C, COPD (chronic obstructive pulmonary disease), emphysema, and depression, specifically stating that the political party fired her in 2004 because of her coughing and breathing problems.  (AR 293-295, 299-300, 303, 310).  At the November 2004, administrative hearing, however, she reported that she had been looking for a job, and her primary disabling impairment was depression.  (AR 307, 315).  Claimant testified that she also had pleurisy from her left shoulder to her left hand, constant headaches, cirrhosis, and difficulty sleeping.  (AR 296).  She complained of constant pain, primarily in her chest area, but also in her shoulders and elbows due to an old car accident and arthritis.  (AR 297, 311).  In response to a question about her consumption of alcohol, Claimant acknowledged that she started drinking heavily after her mother and husband died, but had stopped drinking in 2000 or 2001.  (AR 317).  She noted that she is blind in her left eye, but did not allege that this prevented her from working.  (AR 294, 316-317).

Claimant explained that the symptoms of her hepatitis C included fatigue, daily vomiting, and fluctuations in her appetite.  (AR 295).  She added that, because of her depression, she avoided being around people, which created attendance problems, nightmares, difficulty concentrating, suicidal

---

[4] The first hearing before the ALJ, and his 2003 decision, although vacated by the Appeals Council, are discussed herein because the ALJ expressly incorporated into his 2005 decision the "summary of the medical evidence and rationale contained in" his 2003 decision, except to the extent that the 2005 decision "specifically modified or supplemented" it.  (AR 15).  In addition, the ALJ considered as supplementary the second hearing, and primarily dealt with the issues that the Appeals Council found lacking in his 2003 decision.  (AR 74-76, 307).

thoughts with one failed attempt, auditory hallucinations, paranoia, and daily crying spells.  (AR 300-302).  She reported that the side-effects of her anti-depressant medicine, Zoloft, which she had been taking since her husband's death in 1999, made her feel like a "zombie," lacking all energy.  (AR 297).  Claimant further testified that she frequently had swollen feet and numbness throughout the left side of her body.  (AR 295, 300-301).  By November 2004, she reported that her hands often were numb and she fell if she walked "too much."  (AR 316).

Claimant testified that, in 2000, she started seeing Dr. [Franco] Felizarta, a specialist in hepatitis C, who also prescribed medications for, and treated her, emphysema and depression.  (AR 294-295, 302).  During her first administrative hearing, Claimant testified that after an upcoming appointment, she would start interferon treatments.  (AR 297).  At the second  hearing, however, Claimant reported that she did not start the treatments because she lacked insurance.  (AR 315-316).  She acknowledged that she had not seen anyone, or attended group meetings, for her depression.  (AR 314).

Regarding her daily activities and limitations, Claimant testified that she had to sit down after walking a maximum of one-hundred (100) feet and/or standing five (5) minutes.  (AR 295-296).  She stated, however, that, because she lacked energy, she constantly could sit down.  (AR 296).  Claimant reported that she generally would lay down with her feet elevated during the day.  (AR 297).  Claimant further testified that she (1) had difficulty grabbing things due to her pleurisy; (2) could lift only five pounds; and (3) could not kneel, stoop, or squat.  (AR 296).  Claimant testified, at the 2003 hearing, that she lived alone, prepared microwave meals, and could wash dishes, but her daughter would come to her house and clean it. (AR 298-299).  She reported that she did not shop for groceries, attend church, go to the movies, have any hobbies, or visit friends because she had become isolated.  (AR 299-300).  In response to a question about any difficulties that she had getting dressed or taking showers, Claimant stated that she generally stayed in her nightgown all day.  (AR 299).  Claimant testified that she received $70 bi-weekly in child-support payments and her additional money from her daughter.  (AR 298).  By the second administrative hearing in November 2004, Claimant testified that she received only $39 in back child-support payments, and her daughter had moved in with her and supported her.  (AR 315).

1    A vocational expert, Kenneth Ferra, ("VE") also testified at the second administrative

2    hearing.  (AR 317-320).  The ALJ posed the following hypothetical: whether an individual of

3    claimant's age, education, and past substantial gainful activity, i.e., in-home support services and

4    fast-food worker, who could lift twenty (20) pounds occasionally, ten (10) pounds frequently, sit,

5    stand, or walk six (6) out of eight (8) hours, was limited to simple, repetitive tasks in an environment

6    lacking excessive pulmonary irritants, and was restricted to a position involving little or no public

7    contact, would be able to perform her past relevant work.  (AR 317-318).  The VE responded no, but

8    added that the hypothetical person could perform some jobs, specifically as an assembly worker or

9    hand packer, both of which would be considered light, unskilled work.  (AR 318).  VE Ferra testified

10   that there were approximately 101,000 such jobs in California and 959,000 nationally, but he would

11   reduce that numbers by 95% due to the requirement that they involve simple, repetitive tasks.  (AR

12   318-319).  Claimant's attorney asked whether there were any jobs for an individual with the

13   limitations reported by Dr. Felizarta, which included (1) sitting eight (8) hours, standing and/or

14   walking one (1) hour, and occasionally lifting and carrying five (5) pounds; (2) the inability to

15   engage in simple grasping with her non-dominant left hand, push or pull controls, or do fine

16   manipulation bilaterally; (3) nonexertional, moderate limitations in social functioning; (4) moderate-

17   to-severe difficulty with concentration, persistence, and pace; (5) moderate difficulty responding to

18   co-workers, supervisors, and the public; (6) severe difficulty with attendance; and (7) moderate

19   difficulty responding to usual work settings or dealing with changes in work settings due to her

20   depression.  (AR 319-320).  The VE testified that there were no jobs for a person with those

21   limitations.  (AR 320).

22                                    **STANDARD OF REVIEW**

23   _____Congress has provided a limited scope of judicial review of a Commissioner's decision.

24   42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision to deny benefits, made

25   through an ALJ, when the decision is based on the proper legal standards and is supported by

26   substantial evidence.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is

27   more than a mere scintilla but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-

28   602 (9th Cir. 1989) (quotations omitted).  It is "such relevant evidence as a reasonable mind might

1   accept as adequate to support a conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales,

2   402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).  Moreover, such "inferences and conclusions as the

3   [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is

4   substantial evidence as defined above.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On

5   review, the court considers the record as a whole, not just the evidence supporting the decision of the

6   Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation

7   omitted).

8        It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson,

9   402 U.S. at 400, 91 S.Ct. at 1426-1427.  If the evidence supports more than one rational

10  interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579

11  (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or

12  if there is conflicting evidence that would support a finding of either disability or non-disability, the

13  Commissioner's decision is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir.

14  1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal

15  standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary

16  of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

17                              **RELEVANT LEGAL FRAMEWORK**

18       The Social Security Act defines "disability" as the "inability to engage in any substantial

19  gainful activity by reason of any medically determinable physical or mental impairment which can be

20  expected to result in death or which has lasted or can be expected to last for a continuous period of

21  not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

22  that a claimant shall be determined to be under a disability only if her impairments are of such

23  severity that claimant is not only unable to do her previous work but cannot, considering claimant's

24  age, education and work experiences, engage in any other substantial gainful work which exists in

25  the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

26                              **Sequential Evaluation Process**

27       The Commissioner has established a five-step sequential evaluation process for determining

28  whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if she is

6

engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past.  If the claimant is able to perform his previous work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of his age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287 (1987).

The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five-step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ADMINISTRATIVE FINDINGS**

The 2003 Decision

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since July 11, 2001, which was her alleged onset date. (AR 50, 54). At step two, the ALJ determined that Claimant suffered from an impairment or combination of impairments that were severe, including hepatitis C with cirrhosis, COPD, and depression, as well as the non-severe impairment of alcohol abuse in remission. (AR 51, 54). At step three, the ALJ found that Claimant's impairments were not among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and, therefore, did not meet or equal a listed impairment. (AR 51, 54). At step four, the ALJ determined that Claimant was not able to perform her past relevant work, but did not render a definitive decision regarding whether she had any transferable work skills. (AR 54-55). At step five, the ALJ found that Claimant was capable of restricted light work because she had the residual functional capacity ("RFC") to stand and walk for six hours in an eight-hour workday, lift or carry twenty pounds occasionally and ten pounds frequently, but was limited to simple, repetitive tasks with no excessive exposure to pulmonary irritants and little or no public interaction. (AR 53-55). Accordingly, the ALJ concluded that Claimant was not disabled and, thus, not eligible for benefits under Title II or Title XVI. (AR 55).

Remand Order

On February 27, 2004, the Appeals Council ("Council") vacated and remanded the 2003 decision to ALJ Ross for further proceedings. (AR 73-76). In its order, the Council required, inter alia, that the ALJ (1) explain why he rejected the assessments provided by Claimant's treating physician, Dr. Franco Felizarta; (2) provide a sufficient discussion of Claimant's depression and how it limited her ability to function; (3) obtain testimony from a VE to determine Claimant's occupational base, in light of her restrictions; and (4) consider Claimant's July 21, 2003, subsequent claim for Title XVI benefits.[5]

///

---

[5] See footnote 4.

The 2005 Decision

Before discussing the ALJ's findings in the 2005 decision, it is worth mentioning comments that he made during the second hearing, on November 2, 2004, in response to the Council's order that he explain why he had rejected Dr. Felizarta's assessments.  (AR 307).  ALJ Ross explained that, upon further review, he noted that Dr. Felizarta had stated that Claimant's primary impairments were depression and COPD, but he placed multiple exertional limitations on her based on her breathing and impairments that Claimant had not alleged or been noted in the medical records, which made no sense to him and, thus, provided one explanation for his rejection of the treating doctor's assessments.  (AR 307-309).

In the 2005 decision, the ALJ's findings with respect to the first four of the five sequential steps did not vary from his 2003 decision.  (AR 14-15, 17-18).  He determined that Claimant retained the same RFC as in 2003 and explained that he rejected her treating physician's assessments because Dr. Felizarta opined that Claimant's primary impairment – depression – caused such severe exertional limitations that she could not perform any job.  The ALJ added that he did not understand how Dr. Felizarta's objective observations of Claimant's breathing problems relating to her depression, as the assessment stated.  He further found that there was a lack of evidence that supported the assessments, one of which was a check-the-box form with no indication of the data he relied upon for checking the boxes he did.  (AR 15-16).  Pursuant to the Council's directive, the ALJ discussed in detail his finding that Claimant's depressive symptoms imposed only "a mild to moderate limitation upon her ability to maintain social functioning or maintain concentration, persistence or pace."  (AR 15-16).  He also found credible, as consistent with Claimant's previous statements, her daughter's answers to two questionnaires, completed in 2001 and 2002 respectively, regarding Claimant's daily living activities.  In these questionnaires, Claimant's daughter indicated that her mother was much more active and capable of doing much more in terms of housework, cooking, etc., than she testified she could perform.  (AR 16; see AR 115-20, 140-45

9

(questionnaires)).[6]  Again, given an exertional capacity for light work, and given Claimant's age, education, and work experience, the ALJ noted that a conclusion of "not disabled" would be directed under Rule 202.11 of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2.  (AR 17).  The ALJ, however, noted the nonexertional limitations based on Claimant's COPD and depression, and in accordance with the remand order, referenced the Grids only as a framework for decision-making and, using testimony by a vocational expert, found that there were a significant number of jobs in the state and regional economies that Claimant could perform, such as assembly jobs (3,350[7] jobs in California and 37,600 nationally) and hand packing (1,200 jobs in California and 10,350 in the region).  (AR 17-18).  The ALJ, therefore, concluded that Claimant was not disabled under the Act.  (AR 19).

## ISSUES

Claimant contends that the Commissioner erred both because there was a lack of substantial evidence supporting his findings and because he misapplied the law.  Specifically, Claimant argues that:

(A)   In determining Claimant's RFC, the ALJ relied on a consultant's earlier evaluation, which did not constitute substantial evidence, and erroneously discounted later assessments by her treating physician and an examining consultant without providing a legally adequate explanation;

(B)   The ALJ improperly evaluated Claimant's mental impairments and consequent limitations on her ability to work;

(C)   The ALJ erred in ignoring or finding incredible Claimant's testimony; and

(D)   The ALJ did not meet his burden, under the fifth step of the sequential evaluation process, of demonstrating that Claimant could perform any job in the national economy given that there were conflicts between the Dictionary of Occupational Title's ("DOT") description of the type of work that the VE testified Claimant could perform.

---

[6]  Contrary to the ALJ's statements regarding the questionnaires, Claimant's daughter reports that her mother functions well in the 2001 document, but her activities in general have decreased by the time she completed the 2002 questionnaire.  (AR 115-120, 140-145).

[7]  This number should be 5,050, which is 5% of the 101,000 jobs that the VE testified were available in California, reduced by 95% because of Claimant's non-physical restrictions.  (AR 318-319).

1    As discussed above, this Court must uphold the Commissioner's determination that a

2  claimant is not disabled if the Commissioner applied the proper legal standards and there is

3  substantial evidence in the record as a whole to support the decision.

4                                    **<u>DISCUSSION</u>**

5  **(A) ALJ Erred in Determining Claimant's RFC**

6    In her briefs, Claimant argues that the ALJ erroneously concluded that she had the physical

7  RFC to perform restricted light work based on a faulty evaluation of the medical evidence and the

8  ALJ's reliance on the earliest examining consultant's assessment, which conflicted with the opinions

9  of both her treating  physician and the report of a later examining consultant.  (Doc. 14, pp. 4-5).

10  Claimant further contends that the ALJ neglected to provide "clear and convincing rationale to reject

11  the opinion [and] uncontroverted evidence" of her treating physician.  (Doc. 16, p. 6).

12    An RFC is defined as "what an individual can still do despite his or her limitations."  SSR 96-

13  8p.  A claimant's RFC is not a medical issue but an administrative finding, dispositive of the case,

14  which is reserved to the Commissioner, and, by delegation of authority, to the ALJ.  SSR 96-5p.

15  Accordingly, it is the ALJ who determines the claimant's RFC.  In making this finding, however, the

16  ALJ must consider the whole record and explain how he weighs the medical evidence and testimony.

17  SSR 96-8p.

18    The courts distinguish among the opinions of three types of physicians:  treating physicians,

19  physicians who examine but do not treat the claimant (examining physicians) and those who neither

20  examine nor treat the claimant (nonexamining physicians).  <u>Lester v. Chater</u>, 81 F.3d 821, 839 (9th

21  Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the

22  claimant and her physical condition.  <u>Fair v. Bowen</u>, 885 F.2d 597, 604-605 (9th Cir. 1989).  Thus,

23  more weight is given to a treating physician than an examining physician.  <u>Lester</u>, 81 F.3d at 830.

24    The Commissioner must provide "clear and convincing" reasons for rejecting the

25  uncontradicted opinion of a treating physician.  <u>Lester</u>, 81 F.3d at 830.  "Even if the treating doctor's

26  opinion is contradicted by another doctor, the Commissioner may not reject this opinion without

27  providing "specific and legitimate reasons" supported by substantial evidence in the record for so

28  doing."  <u>Id.</u>

1    In the instant case, ALJ Ross found, based on the records, that Claimant had the RFC to

2  perform light work involving simple, repetitive tasks, with limited public interaction and avoidance

3  of excessive exposure to pulmonary irritants, as more fully discussed above.  (AR 18, 55).  Because

4  the opinions of Dr. Felizarta contradicted those of Drs. Dozier and Hui to a greater or lesser extent,

5  the ALJ had to provide a "specific and legitimate" reason for rejecting Dr. Felizarta's opinion.

6  Lester, 81 F.3d at 830.

7    The ALJ, in determining Claimant's RFC, stated that he rejected the exertional limitations

8  contained in Dr. Felizarta's 2003 assessments reaching this conclusion, in part, because the physical

9  capacity evaluation  was a "check the box" with no supporting data and the questionnaire stated that

10  Claimant's primary impairment – depression – precluded her from doing any physical work because

11  of her breathing problems or whether her breathing problems caused her depression.[8]  (AR 16,

12  307-309; see AR 229-230 (Dr. Felizarta's evaluation and questionnaire)).  Generally, a check-box

13  form is entitled to little weight.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the

14  ALJ's rejection of a check-off report that did not contain an explanation of the bases for the

15  conclusions made was permissible).  Moreover, a review of Dr. Felizarta's medical records indicate

16  that, from November 2001 through February 2003, Claimant complained of acute or chronic pain

17  twice – once due to a migraine headache and once because of a cough that Dr. Felizarta diagnosed as

18  bronchitis.  (AR 246, 249).  Dr. Felizarta primarily prescribed medications for Claimant's depression

19  (Zoloft and Elavil) and COPD (Albuterol), during her routine visits to follow-up on her hepatitis C,

20  with no mention of any adverse side-effects.  His notes occasionally referenced left shoulder and

21  elbow pain, but x-rays indicated no abnormalities.  Dr. Felizarta advised Claimant to stop smoking

22  and referred her to a nutritionist because of her obesity.  (See generally AR 221, 236-262).  Among

23  his records there is a document entitled "Adult Problem List," in which Dr. Felizarta wrote that

24  Claimant's major problems included hepatitis C, depression, COPD, and migraines, and her

25  recurrent and/or acute problems included left shoulder and elbow pain, laryngitis, and bronchitis.

26  (AR 238).  It is not clear whether he was reiterating Claimant's reported history or the list was based

27

28    [8]  The questionnaire asked for Claimant's "primary impairment(s)."  (AR 230).

on his treatment.  Nonetheless, given the lack of treatment records or any adequate explanation in them or his evaluations for his determination that Claimant physically was not able to work, the ALJ's stated reasons for rejecting Dr. Felizarta's opinions were more than adequate.

In addition, an examining physician's evaluation and opinion can serve as substantial evidence for rejecting a treating physician's opinion.  Magellanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ relied on a combination of the exertional restrictions reported by examining physicians Lisa Hui and Dr. Manual Dozier.  (AR 192-195, 222-226).  Dr. Hui opined that Claimant's  only restrictions related to her decreased vision and alcohol-induced blackouts. (AR 195).  Dr. Dozier diagnosed Claimant with hepatitis C, COPD, and degenerative joint disease, and opined that she had exertional, postural, and manipulation limitations.  (AR 226).  The ALJ concluded that Claimant had some, but not all, of the exertional limitations reported by Dr. Dozier, and differed with the extent of some of Dr. Dozier's restrictions.  (AR 17).

Here, the ALJ provided specific and legitimate reasons for rejecting Dr. Felizarta's assessments.  Moreover, the evidence supported more than one rational conclusion, rendering his findings conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987); Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Based on the foregoing, the undersigned finds no error with respect to the ALJ's RFC determination.

**(B)   Claimant's Mental Impairments and Resultant Limitations**

Closely related to Claimant's first argument, here she contends that the ALJ disregarded the examining specialists' and the state physician's evaluations concerning the extent of her depression and the restrictions that it imposed on her ability to work, instead ignoring those portions of the assessments that he felt did not fit in with his opinion.  (Doc. 14, pp. 8-9; Doc. 16, p. 7).  Claimant further asserts that the ALJ's decision did not provide "sufficient rationale" for rejecting the report of examining psychiatrist S.A. Manohara and the evaluation by state physician Dr. Janet Hewins. (Doc. 16, pp. 5-7).

As discussed above, an examining, but non-treating, physician's opinion is accorded more weight than that of a non-examining consultant.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ, while required to consider the record in its entirety, may also rely on any non-substantial

gainful work that the individual engaged in during the relevant period as evidence that the claimant

is capable of doing more work than he actually did.  20 C.F.R. §§ 404.1571, 416.971

This case involves the reports of two examining psychiatrists, the state physician's psychiatric

review technique and mental residual functional capacity assessment.  (AR 196-217, 271-276).

Psychiatrist S. A. Manohara examined Claimant on January 18, 2002.  According to what Claimant

told Dr. Manohara, she became depressed after her husband's death in 1999, but she was taking

Zoloft and Elavil, which helped with both her depression and insomnia.  Dr. Manohara noted that

Claimant's problems related to her memory and concentration and diagnosed her with having had a

single, severe episode of major depression and intermittent alcohol abuse with a current global

assessment of functioning ("GAF") at 42, and her past year GAF at 58.  Dr. Manohara concluded

that Claimant's major depression caused moderate and/or moderate to severe difficulty in

(1) maintaining social functioning; (2) concentration, pace, and persistence; (3) responding

appropriately to co-workers, supervisors, and the public; (4) attendance; (5) responding to usual

work situations and changes in routine work settings.  (AR 196-199).

State physician Janet Hewins, Ph.D., completed a psychiatric review technique and mental

residual functional capacity assessment on February 20, 2002.  (AR 200-217).  Dr. Hewins reported

that Claimant had affective disorders – specifically depressive syndrome – and alcohol abuse, a

substance addiction disorder.  (AR 200, 203, 208).  With respect to Claimant's limitations,

Dr. Hewins indicated that she was moderately limited in the activities of daily living and

maintaining social functioning, and moderately to markedly limited in maintaining concentration,

persistence, and pace.  (AR 210).

On January 4, 2005, Dr. Shailesh Patel, a psychiatrist, examined Claimant.  Claimant reported

that she felt hopeless and has had memory problems since being involved in a 1984 car accident.

She added that she heard voices telling her that she did not need to be here.  She reported receiving a

DUI (driving under the influence) in 2000 and serving eight months in jail for spousal abuse in 2001.

Claimant added that her father molested her when she was six months old.  After performing a

mental status examination, Dr. Patel diagnosed her with major depressive disorder, moderate,

recurrent.  He determining that Claimant could interact with others but may have difficulty

14

interacting with co-workers and supervisors in stressful situations.  Dr. Patel noted that her attention and concentration were good throughout the evaluation.  He opined that it might be difficult for her to understand and carry out simple instructions.  (AR 271-273).

In his 2005 decision, the ALJ found that, due to her depression, Claimant had "a mild to moderate limitation upon her ability to maintain social functioning or maintain concentration, persistence or pace."  (AR 15-16).  This was based on the questionnaires completed by Claimant's daughter, her recent telemarketing job, his incorporation of Dr. Manohara's evaluation as set forth in his 2003 decision, Dr. Patel's assessment, and Claimant's ability to respond appropriately during the hearing.  (AR 15-17, 52).

The ALJ did not give Dr. Patel's evaluation the weight normally due an examining doctor to the extent that his opinion that Claimant might have difficulty interacting or carrying out simple instructions was contrary to the telemarketing work that she recently had been doing on behalf of a political party.  (AR 15-16).  The ALJ noted that the telemarketing position required constant interaction with the public and "the ability to perform simple tasks."  (AR 16).  The ALJ's finding that Claimant had mild to moderate limitations in most nonexertional areas based on her depression represents a combination of the limitations imposed by examining Drs. Manohara and Patel, as discounted by Claimant's reported activities and ability to interact appropriately with people she encountered.  (See AR 196-99, 271-73).

Based on the record as a whole, the undersigned finds that the ALJ adequately resolved any conflicting evidence with respect to limiting effects caused by Claimant's depression.  Richardson v. Perales, 402 U.S. 389, 400, 91 S.Ct. 1420, 1426-1427 (1971).  The undersigned, therefore, finds no error in the restrictions imposed on Claimant due to her mental status.

**(C)   ALJ'S Failure to Consider, or Find Credible, Claimant's Testimony**

Claimant argues that the ALJ erred in rejecting her testimony regarding her symptoms and the extent to which they limited her on the basis that she had not undergone tests that would prove that she did, in fact, suffer from the ailments that she claimed, she was a smoker, and she had not been obtaining treatment for her medically determined impairments, including her depression and hepatitis C.  (Doc. 14, pp. 9-10).  Claimant contends that Dr. Felizarta had been treating her for

1  depression and pain.  (Id. at 10).  She further asserts that her testimony has been consistent with the

2  record and third-party questionnaires.  (Id. at 11; Doc. 16, p. 8).

3        A two step analysis applies at the administrative level when considering a claimant's subjective

4  credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce

5  objective medical evidence of an impairment and show that the impairment could reasonably be

6  expected to produce some degree of symptom.  Id. at 1281-1282.  If claimant satisfies this test – and

7  if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the

8  severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing

9  so."  Id. at 1281.  This level of specificity is crucial because, in its absence, effective judicial review

10 may not be possible.  See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The

11 lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

12 impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

13 evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the

14 individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

15 statements and reasons for that weight").

16       In this case, there was evidence that Claimant suffered severe impairments – specifically

17 hepatitis C, depression, and COPD, which the ALJ acknowledged.  (AR 51).  Dr. Felizarta was

18 treating her for all of these ailments.  (See AR 236-262); see Sprague v. Bowen, 812 F.2d 1226, 1232

19 (9th Cir. 1996)(holding that a claimant's regular doctor, who prescribed psychotropic medicine for

20 her depression, was treating her depression)).  Dr. Felizarta noted during one visit that Claimant

21 suffered neuropathy secondary to her hepatitis C, which covers a broad range of ailments, including

22 fatigue, pain, or weakness.  (AR 254).  Claimant also produced evidence that her impairments might

23 have caused other symptoms; i.e., that her depression and insomnia caused fatigue, although the

24 record revealed that her depression and its symptoms had improved when she started taking anti-

25 depressants.  (AR 197).

26       Because Claimant appears to have satisfied the first step of the Smolen analysis, the ALJ was

27 obligated to provide specific, clear, and convincing reasons to reject or discount her testimony

28 regarding her symptoms.  Smolen, 80 F.3d at 1281-82.  The ALJ found that Claimant's testimony

was not credible to the extent that it conflicted with the record and third-party questionnaires, specifically citing the discrepancies between her testimony and her reported daily activities and admissions made to various doctors.  (AR 53).  Although the ALJ also relied on the lack of certain tests, such as a chest x-ray, and her failure to seek counseling for her depression, the overall record supports his credibility determination.  Nothing in Dr. Felizarta's or the examining physicians' records indicated that Claimant suffered the constant, chronic pain or fatigue and lack of energy to which she testified.  (AR 192-195, 222-226, 236-262).  There was substantial evidence that she was capable of doing, or actual did, more on a daily basis than her testimony indicated, including her telemarketing job in 2004.  (AR 115-120, 152-154).  Moreover, her testimony is internally inconsistent, and inconsistent between hearings.  (See AR 287-301).

Because, as the ALJ found, there was a lack of evidence to support Claimant's testimony regarding the degree of her symptoms, which the ALJ noted in the 2003 decision, the undersigned finds that there was no error in his finding that her testimony was not entirely credible.

**(D)   Misapplication of the Grids and Erroneous Reliance on the VE's Testimony**

(i)   ALJ's error in using the Grids to ascertain whether Claimant was disabled

Claimant initially asserts that the ALJ erred in applying the grids because her nonexertional restrictions "significantly limit the range of performable work" that she could undertake, thereby precluding reliance on the grids.  (Doc. 14, pp. 11-13).  She contends that, due to the nonexertional limitations, the testimony of a VE is necessary.  (Id. at 12).

If a claimant suffers exertional limitations only, the ALJ must utilize the Grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2, to ascertain whether his limitations render him disabled or eligible for benefits.  Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If, however, the claimant only has nonexertional limitations, such as mental or environmental restrictions, the Grids cannot resolve the issue of disability.  Id. at 1155 and fn. 7.  When a claimant suffers both exertional and nonexertional limitations, the ALJ first determines whether the claimant is disabled under the Grids based on his exertional limitations.  Id. at 1155.  If the claimant is not disabled because of his exertional limitations, the ALJ "must use the grids as a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be

1   contraindicated by the nonexertional limitations." Id. (quotations and citations omitted).  Under

2   these circumstances, the testimony of a VE is required.  Burkhart v. Bowen, 856 F.2d 1335, 1340

3   (9th Cir. 1988).

4        Here, it is not clear to what Claimant is objecting.  ALJ Ross followed the law outlined above,

5   as he first used the Grids to ascertain whether Claimant's exertional limitations were disabling.

6   Cooper, 880 F.2d at 1155; (AR 17, 51).  Upon finding that Claimant was not eligible for benefits

7   solely because of her physical restrictions, he applied the grids as a framework and solicited the

8   testimony of  a VE testify as to if, given Claimant's exertional and nonexertional restrictions, there

9   existed a significant number of jobs that she could perform.  Id., Burkhart, 856 F.2d at 1340; (AR

10  17-18, 53-55).  The ALJ then found that Claimant was not disabled.  (ALJ 19).  Accordingly, the

11  undersigned finds that this argument is without merit and no error attaches to the ALJ's actions.

12  (ii)  Conflict between jobs the VE testified Claimant could perform and DOT's description of same

13       Claimant argues that, although the VE testified about jobs that involved simple, repetitive tasks

14  that Claimant could perform, the DOT described the jobs as demanding detailed, as opposed to

15  simple, reasoning.  (Doc. 16, p. 9).  Because the ALJ did not question the VE about the apparent

16  conflict between the DOT's job description, and the VE did not provide an explanation, Claimant

17  contends that the ALJ failed to apply the relevant law and there was a lack of evidence supporting his

18  conclusion that work existed in the national economy that Claimant could perform.  (Id. at 9-10).

19       Before SSR 00-4p, the ALJ, in determining at step five whether jobs existed that a claimant

20  had the ability to perform, could rely on the testimony of a VE, regardless of whether it was

21  inconsistent with the DOT's description of the job.  Johnson v. Shalala, 60 F.3d 1428, 1434-1436

22  (9th Cir. 1995); Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995).

23  On December 4, 2000, however, SSR 00-4p became effective.  The ruling stated, in part, that

24       Occupational evidence provided by a [vocational expert] generally should be consistent
         with the occupational information supplied by the DOT. When there is an apparent

25       unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator
         must elicit a reasonable explanation for the conflict before relying on the [vocational

26       expert] evidence to support a determination or decision about whether the claimant is
         disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record,

27       the adjudicator will inquire, on the record, as to whether or not there is such consistency.

28  SSR 00-4p.  It also imposed on the ALJ "an affirmative responsibility to ask [a testifying VE] about

18

1    any possible conflict between that VE['s] evidence and information provided in the DOT." Id. The

2    ALJ is required to ask the VE if there is a conflict and, if the VE answers in the affirmative, to

3    "obtain a reasonable explanation for the apparent conflict." and explain it in his decision. Id. If the

4    conflict between the VE's testimony and the DOT's job description is not resolved, the ruling

5    prohibits the ALJ from relying on the VE's testimony to support a finding that the claimant is not

6    disabled. Id.

7        The Ninth Circuit has not yet interpreted or discussed SSR 00-4p in a published or unpublished

8    opinion.  The few federal courts that have published opinions involving this matter have been

9    somewhat inconsistent in their construction and application of the ruling.  For example, the Seventh

10   Circuit recently remanded a case, in part, to the Commissioner because the ALJ had not questioned

11   the testifying VE about apparent inconsistencies between the requirements of jobs that he testified

12   the  claimant could perform and the DOT's description of those jobs. Prochaska v. Barnhart, 454

13   F.3d 731, 735-736 (7th Cir. 2006).  The Eighth Circuit held that, although there were inconsistencies

14   between the hypothetical posed to the VE, one of the jobs that he testified claimant could perform,

15   and the DOT's job description, because the VE testified about other jobs that the claimant would be

16   able to do, there was no reversible error. Clay v. Barnhart, 417 F.3d 922, 931 (8th Cir. 2005).  In

17   contrast, the Third Circuit limited the scope of the ruling to situations in which the VE actually

18   testified about the requirements of a job, rather than simply stating its title, as long as there was

19   substantial evidence supporting the ALJ's findings. Rutherford v. Barnhart, 399 F.3d 546, 556-557

20   (3rd Cir. 2005).  As in Clay, the District Court for the District of Colombia found that the ALJ's

21   failure to question the VE about inconsistencies did not automatically bestow upon the claimant the

22   right to a remand where there was substantial evidence that the claimant had the ability to work at

23   one of the jobs identified by the VE. Brown v. Barnhart, 408 F.Supp.2d 28, 34-36 (D.D.C. 2006).

24       In the instant case, the ALJ did not ask the VE if the five percent of packing and assembly jobs

25   that he testified Claimant could perform were inconsistent with the DOT's description or definition

26   of those jobs, in accordance with SSR 00-4p.  (AR 317-320).  This, by itself, may not necessitate a

27   remand in this Circuit, since the precedential case law has not been abrogated or otherwise called

28   into doubt, but for the fact that it is not clear whether any of the jobs, as described by the DOT, fall

1  within the Claimant's abilities as described in the ALJ's hypothetical to the VE.[9]  See Clay, 417 F.3d

2  at 931,  Brown, 408 F.Supp.2d at 34-36; but see Prochaska, 454 F.3d at 735-736; (AR 317-18).

3  Because there appear to be some inconsistences that the ALJ did not resolve, the undersigned

4  recommends that this case be REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), to

5  resolve and making findings regarding the possibility of a conflict between the VE's testimony and

6  the DOT's job descriptions, in accordance with SSR 00-4p.  If necessary, the ALJ may solicit

7  information if any reduction in jobs that Claimant could perform would reduce jobs available in the

8  national economy below a "significant number." Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.

9  1984); 20 C.F.R. § 404.1566.

10                                               **CONCLUSION**

11         For the reasons discussed above, this Court finds error in the ALJ's disability determination

12  analysis and that such analysis was not based on proper legal standards.  Accordingly, this Court

13  ORDERS:

14         1.    That Claimant's Social Security complaint be GRANTED;

15         2.    That the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

16  further consideration, consistent with this decision, of whether a conflict exists between the jobs that

17  the VE testified Claimant was capable of performing and the DOT's job description, including

18  whether any discrepancy would reduce the number of jobs available in the national economy to less

19  than a significant number, SSR 00-4p, 20 C.F.R. § 404.1566, Kail v. Heckler, 722 F.2d 1496, 1498

20  (9th Cir.  1984); and

21         3.    That Judgment be ENTERED for Claimant Sherry Logan and against Defendant Michael

22  J. Astrue.

23

24  IT IS SO ORDERED.

25  Dated:   **March 27, 2007**                              **/s/ Theresa A. Goldner**

26

27         [9]  The ALJ's hypothetical individual's restrictions included limitations to "simple, repetitive tasks" and
   "occasionally lifting 20 lbs."  (AR 318).  A cursory review of the DOT's job descriptions for packers and assembly
   workers require either occasionally lifting of up to 50 lbs. and/or a reasoning level of 2, which may or may not be

28  "simple."  See D.O.T. 920.665-010, 920.587-018.

**j6eb3d**                                        UNITED STATES MAGISTRATE JUDGE